**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **20-03190-hb**

## ORDER SANCTIONING RECOVERY LAW GROUP, APC

The relief set forth on the following pages, for a total of 29 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**11/03/2021**



Chief US Bankruptcy Judge
District of South Carolina

Entered: 11/03/2021

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 20-03190-HB |
| Teresa Denise Green, | Chapter 7 |
| Debtor(s). | **ORDER SANCTIONING RECOVERY LAW GROUP, APC** |

**THIS MATTER** is before the Court on the Motion filed by Linda K. Barr, attorney for John P. Fitzgerald, III, Acting United States Trustee for Region Four[1] seeking sanctions and other relief involving Recovery Law Group, APC, and the Objection thereto.[2]  The parties filed a Joint Statement stipulating certain facts, including exhibits.[3]  At the hearing, attorney Andrew Brown, Debtor Teresa Denise Green, Julie Smoak (auditor with the UST), Chapter 13 Trustee Gretchen Holland, and Nicholas Wajda (sole owner of Recovery Law) testified.  The Court allowed the opportunity to submit post-trial briefs.[4]  After careful consideration, the Court enters the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and 9014.

### FINDINGS OF FACT

### I.   GREEN'S BANKRUPTCY CASE

Green is an "assisted person" as defined by 11 U.S.C. § 101(3) and resides in South Carolina.  She discovered Recovery Law after conducting an internet search for bankruptcy lawyers and finding its website.  Green testified that she spoke with attorney Karen Kealey, who advised Green on the bankruptcy process, her financial condition, and the documents and information required to file for bankruptcy relief.

---

[1] ECF No. 33, filed Apr. 1, 2021.
[2] ECF No. 50, filed May 3, 2021.
[3] ECF No. 65, filed Aug. 13, 2021.
[4] ECF Nos. 71-72.

Green entered into a Retainer Agreement with Recovery Law on July 10, 2020.[5]  At that time, no attorney admitted to practice in the U.S. District Court for South Carolina and thus, also admitted to practice in this Court ("admitted attorney") was employed by or associated with Recovery Law.  The Retainer Agreement does not disclose an attorney assigned to Green's case and it was not signed by any representative of Recovery Law.

Under the Retainer Agreement, Green was to pay Recovery Law $1,635.00 for a fully earned, nonrefundable flat fee that:

> will not be shared with any other person unless they are members of this law firm. However, we occasionally may request an attorney, who is not a member of this firm to appear at a scheduled 341 meeting or other Court hearing and this appearance is made without compensation.  In other instances, this firm may share fees with special appearance counsel in an amount not to exceed $250 per appearance.  If fees are shared, there is no additional charge to you, the debtor(s).

The Retainer Agreement provides "[t]he services agreed to here are inclusive of the preparation of the bankruptcy petition and schedules and the handling of creditor communication.  These actions typically are done immediately upon hiring of [Recovery Law] and thus fees paid up to the first $1,200.00, at a minimum, are earned by these actions."  Excluded from the flat fee are preparing motions to avoid liens, drafting reaffirmation and redemption agreements, and representing the debtor in response to any objections to exemptions, motions to dismiss, and/or motions for relief from stay.  It states "[o]ur representation of you in any of said extraordinary matter will [be] done so pursuant to a separately agreed upon fee arrangement between you and this firm."  Green was not provided a schedule of fees or separate agreement for the excluded services.

Brown is an admitted attorney.  On July 3, 2020, Brown responded to Recovery Law's job posting for "Attorney for Bankruptcy Law Firm – Contract Basis with Room to Advance."[6]  He

---

[5] UST Ex. 3.
[6] UST Ex. 2.

2

executed an Employment Agreement with Recovery Law on August 5, 2020[7] – 26 days after Green retained and paid Recovery Law to file a bankruptcy case. The parties stipulated that under the Employment Agreement, Brown's employment with Recovery Law commenced upon its execution. Two days later, on August 7, 2020, a voluntary petition was filed on Green's behalf using Brown's U.S. District Court admission and bankruptcy CM/ECF permissions, and with his electronic signature included on the filing, making him the attorney of record for the case.[8]

Brown did not speak with Green before she decided to file for Chapter 7 relief or otherwise communicate with her during the prepetition preparation of her filings. Indeed, Brown never consulted with Green pre- or post-petition. When she tried to contact Brown, he was unavailable and his voicemailbox was full. There is some evidence Brown experienced personal difficulties around that time, but the details are vague. Green only communicated with non-attorney personnel at Recovery Law and Kealey, who prepared her petition, schedules, and statements but is not an admitted attorney. Brown did not supervise the personnel who provided legal services to Green or review the documents prepared by them. There is no evidence that Green was advised as to any rights pursuant to § 524(c) (reaffirmation agreements). Wajda testified that if those discussions occur, they are generally during the initial consultation with Recovery Law's attorneys who are not admitted attorneys.

The Disclosure of Compensation of Attorney for Debtor (Official Form B2030) filed with Green's petition states Brown agreed to accept and received $0.00 for his legal services.[9] The Statement of Financial Affairs is inconsistent and states Green's daughter paid Recovery Law $1,835.00 in July 2020 for attorney's fees and the filing fee. Recovery Law was actually paid

---

[7] UST Ex. 1.
[8] UST Ex. 9.
[9] UST Ex. 10.

$1,635.00 (as set forth in Green's Retainer Agreement) to cover the $335.00 filing fee and $300.00 to Brown for representing Green in this case, with the remainder earmarked for Recovery Law. Wajda testified that Brown was paid to review and file the petition, schedules, and statements, and to handle any post-petition matters covered by the Retainer Agreement. However, Brown did not receive a copy of Green's Retainer Agreement to know what services were included. The Disclosure of Compensation states that for his portion of the fee, Brown:

> agreed to render legal service for all aspects of the bankruptcy case, including:
>
> a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
>
> b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
>
> c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof; [and]
>
> d. . . . Negotiations with secured creditors to reduce market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed . . .

There are errors in Green's schedules and statements, including: the Statement of Intent is incomplete; inconsistent pension income between Schedule I and the means test; information missing for her bank accounts, pension account, and tax refunds owed; Mariner Finance, LLC and Republic Finance are scheduled as unsecured debts despite motions to avoid their judicial liens subsequently filed; and according to Green's testimony, incorrect income is listed in Schedule I. Wajda testified these errors were caused by Kealey, who is no longer employed by Recovery Law for this reason. No amended schedules were filed to correct these errors.

Green's meeting of creditors pursuant to § 341 was originally scheduled for September 30, 2020.[10] Green attempted to speak with Brown prior to the § 341 meeting, but Brown did not contact or communicate with her. Green called-in to the telephonic § 341 meeting, but Brown

---

[10] UST Ex. 7.

failed to do so.  Both Brown and Green participated in the continued telephonic § 341 meeting on October 14, 2020.

Brown testified that he drafted two motions pursuant to § 522(f)(1)(A) (avoid judicial liens) with the assistance of Recovery Law personnel.  The Court issued multiple deficiency notices due to a failure to comply with local procedure and requirements.  Brown testified that he did not advise Recovery Law personnel on local procedure, but rather contacted non-admitted attorneys at Recovery Law for assistance in complying therewith.  There was significant delay because the motions were withdrawn, re-filed, and amended several times in attempts to cure the deficiencies. Despite no objections, orders granting the requested relief were not entered until five and six months after the motions were initially filed.

Although Green received her credit counseling in February 2020 and her case was filed in August 2020, her required certificate of credit counseling was not filed until January 4, 2021, after a reminder from the Court.  Green eventually received her discharge on June 10, 2021.  After the UST's Motion was filed, Recovery Law paid $1,835.00 to Green.[11]

## II.  RECOVERY LAW

Recovery Law advertises itself on the internet as a business having offices located throughout the United States, including South Carolina.  Recovery Law's website lists its local address as 1014 Raleigh Ridge, Fort Mill, which is an apartment building.  It is a domestic corporation formed in Nevada and is not registered to do business in South Carolina.

Recovery Law markets itself online as affordable and flexible by promoting technological efficiencies, including remote consultations and online document sharing, and accessibility by

---

[11] This is the amount included on Green's Statement of Financial Affairs, even though Recovery Law only received $1,635.00 for its attorney's fees and the filing fee.

"offering legal services to everyone in the country."[12]    Its website invites potential clients to "Access Recovery Law Group's legal expertise and go debt-free wherever you are in the US.  Click on your nearest location below and get connected with a local bankruptcy expert."[13]    South Carolina is one of the locations listed on Recovery Law's website with the option to connect with a "local bankruptcy expert."  The website's marketing to potential clients also states:

> Your case is safe in the hands of our dedicated and experienced attorneys. Throughout our years of practice, we have understood the legal system and laws to the core, and we have brought together the strategies and legal systems in a way that helps us to protect consumers and resolve the problems of our clients, uniquely.[14]

Brown's application for employment with Recovery Law indicated he had two years of bankruptcy experience and previously worked as an associate attorney at a local consumer debtor firm in Columbia, South Carolina.  His Employment Agreement with Recovery Law indicates it was an at-will, part-time, contract position as a non-equity, non-voting partner/member to be compensated per case as follows: $300.00 per Chapter 7 case filed; $350.00 per Chapter 13 case filed; and $350.00 per Chapter 13 case subsequently confirmed.  Brown's duties under the Employment Agreement included:

- final preparation of bankruptcy petitions, preparing and filing motions and managing Chapter 7 and Chapter 13 client cases;

- working collaboratively with the managing attorney and staff;

- managing client caseload, while producing high quality work product;

- communicating with clients via telephone, email, and in-person meetings;

- appearing, or scheduling reliable appearance counsel, at all required meetings of creditors, motion hearings, and/or confirmation hearings on cases Brown files;

---

[12] UST Ex. 20 at 7.
[13] *Id.* at 19.
[14] *Id.* at 16.

- communicating with trustees and court officials via court-call, email, phone conferences and in-person; and

- maintain admission to all districts where Brown will be practicing and maintain an active ECF filing account within each district.

Brown was required to add Recovery Law's email address to all ECF notice email groups prior to filing cases to allow Recovery Law personnel to review filings and docket activity in cases filed by him.  The Employment Agreement also states:

> [i]mmediately upon being notified of an appointment with a client, [Brown] will cross-check against the database of any other law firm associated [sic] also associated with [Brown], to identify any conflicts of interest which might interfere with [Brown]'s or [Recovery Law]'s representation of such client and will immediately notify [Recovery Law] of such conflict.  Furthermore, [Brown] will update each other law firm's database to disclose [Recovery Law]'s potential representation and avoid such future conflict.

Under the Employment Agreement, Brown authorized Recovery Law to represent to the public that his physical address was also that of Recovery Law.  Brown was supposedly supervised by Wajda – an attorney licensed in California, Nevada, Colorado, and Texas – and received case direction from other individuals who are not admitted attorneys.

Despite the terms of the Employment Agreement, all prepetition work for cases filed by Brown was performed by others at Recovery Law.  Wajda testified that under Recovery Law's procedure, a client who contacts Recovery Law speaks with a non-attorney staff member who gathers intake information.  The client is then transferred to an attorney who conducts the initial interview and advises the debtor on his/her financial situation, whether to file bankruptcy, and which Chapter to file.  That person is not an admitted attorney nor licensed in South Carolina.  The debtor's financial information and documents are sent to that attorney who prepares the voluntary petition, schedules, and statements.  An admitted attorney must be engaged to file the case using his or her U.S. District Court admission, U.S. District Court bar number, and CM/ECF login

7

credentials.  Wajda testified that the admitted attorney is expected, but not required, to contact the debtor within 48 hours of filing the case.

Brown never conducted a conflict check or input his clients into Recovery Law's database. Brown testified that during his employment with Recovery Law he would receive for filing petitions, schedules, and statements completed by Recovery Law's staff and believed his duties began upon their receipt and not before.  Brown and Recovery Law are each a "debt relief agency" as defined in 11 U.S.C. § 101(12A) and provided assistance to debtors in this District.

At the time Brown was hired in August 2020, he was the only admitted attorney at Recovery Law who could file a bankruptcy case in South Carolina.  Despite Recovery Law's advertisements, there is no evidence that it employed an admitted attorney prior to that time. Brown stopped working for Recovery Law in March 2021.  Although he continues to work on pending cases, he no longer accepts new clients from Recovery Law.

Wajda testified that an attorney licensed in South Carolina was hired by Recovery Law prior to Brown's association ("Attorney 1").  Attorney 1 was advertised as its "local bankruptcy expert" for South Carolina.  The parties stipulated that Attorney 1 is located in Georgia and Wajda testified that Attorney 1 misrepresented she was an admitted attorney.  Even after discovery of this fact, as late as August 2021, Recovery Law's website still advertised Attorney 1 as a "local bankruptcy expert" in South Carolina along with another individual ("Attorney 2") who also is not an admitted attorney, and, therefore, cannot file cases in this Court.  William Joseph Virgil Barr was later hired and added to Recovery Law's website along with Attorney 1, Attorney 2, and Brown (who was still advertised as one of its "local bankruptcy experts" as late as August 2021 despite not working for Recovery Law since March 2021).  Recovery Law's website describes Mr. Barr as having "over five years' experience in filing and or drafting Chapter 13 and Chapter 7

8

Bankruptcy matters to include, Conduit Plans, Adversarial Proceedings, and other Bankruptcy related proceedings."[15]  While Mr. Barr has prior experience working with his father as a non-attorney, he only became a member of the South Carolina bar on January 26, 2021, and an admitted attorney on March 8, 2021.[16]  Mr. Barr is currently Recovery Law's only admitted attorney taking new cases.  He is paid a salary and not compensated per case.

## III.    OTHER SOUTH CAROLINA BANKRUPTCY CASES FILED BY RECOVERY LAW

Green's case was the first bankruptcy case filed by Recovery Law in this Court.  Other cases filed here are considered to determine whether Green's case presents a mistake or isolated incident.  After review, it is clear that Recovery Law's advertisements directed at assisted persons and agreements with them about the experience and involvement of "local bankruptcy experts" are inaccurate and the lack of adequate involvement by an admitted attorney extends beyond Green's case.

As of August 31, 2021, when this hearing was held, Recovery Law had filed more than 40 bankruptcy cases here, 18 of which with Brown as the attorney of record.[17]  Three are Chapter 13 cases in which Holland serves as the trustee: *In re Johnson*, C/A No. 20-04603-hb, *In re Dillard*, 21-00279-hb, and *In re Wheeler*, 21-00798-hb.[18]  The retainer agreements between Recovery Law and these Chapter 13 debtors excluded from the flat fee motions to value property and/or avoid liens, which acts are part of this Court's mandatory Chapter 13 form plan, and are improperly excluded.[19]  The retainer agreements also excluded post-confirmation work and did not provide a

---

[15] UST Ex. 21 at 4.

[16] UST Ex. 22 at 3 & Ex. 23 at 2.

[17] This fact was stipulated without objection. *See* ECF No. 65 at ¶¶ 10 & 46.

[18] While Recovery Law stipulated only to the fact that these three cases were filed by it with Brown as the attorney and they remain open, it did not object to admission of the UST's exhibits that included these debtors' retainer agreements, the case dockets, and the Chapter 13 trustee's notes on issues with these cases and communications with Recovery Law personnel regarding the same.  Therefore, such evidence is a part of the record and may be considered in examining the relief requested under § 526(c)(5).

[19] UST Exs. 4-6.

schedule of fees for the excluded services.  The retainer agreement with Johnson is dated June 19, 2020 – a time when no admitted attorney was employed by Recovery Law – yet includes an electronic signature for Brown.[20]  The retainer agreements with Dillard and Wheeler were signed by Wajda, who testified they were not signed on the date appearing thereon but were backdated.[21]

Attorneys who are not admitted attorneys provided pre- and post-petition services to these debtors and gave legal advice regarding filing a bankruptcy case in this Court.  Brown testified that, except for three or four of the 18 cases he filed in association with Recovery Law, he was not involved in the prepetition preparation of petitions, schedules, and statements or discussions with the clients prior to completion of those documents.  Brown did not review the debtors' tax returns or financial documents to compare the completed documents for accuracy or to determine whether bankruptcy relief was appropriate.  Brown admitted that personnel at Recovery Law who are not admitted attorneys determined whether these debtors should file for Chapter 13 relief, prepared the schedules and statements, drafted the plans, and used Brown's CM/ECF login "as needed" to file documents.  Brown testified that he did not assist with or review the Chapter 13 plans filed in these cases under his CM/ECF login and with his electronic signature affixed.  Brown was paid by Recovery Law to appear at the § 341 meetings and understood that he would be responsible for any post-petition work requested by the Chapter 13 debtors, but the fees for that work would be paid to Recovery Law.

It is clear from email communications to the Chapter 13 trustee's office – some of which did not even include or copy Brown – that other, non-admitted attorneys and personnel at Recovery Law were primarily involved in these cases and did most of the work, including: calculating the plan payments and treatment of secured creditors; reviewing claims; submitting documents;

---

[20] UST Ex. 4.
[21] UST Exs. 5 & 6.

contacting creditors; and otherwise representing the debtors.[22]  Various issues concerning basic local practices and procedures arose in these cases, including: modifying and deleting language in the Court's form plan contrary to SC LBR 3015-1; including the incorrect presumptive interest rate for § 1325 established by SC LBR 3015-6; failing to notice confirmation hearings correctly (e.g., not providing sufficient time for objections pursuant to Exhibit A to SC LBR 9013-4, not filing certificates of service for the notice of the plan and confirmation hearing pursuant to SC LBR 3015-3); failing to timely serve plans; failing to use the appropriate local forms when required; deficiencies in proposed plans (e.g., no treatment for secured claims, inadequate plan payment base); failing to file the signed retainer agreements with the Disclosure of Compensation as required by SC LBR 2016-1; and inefficient communications with the trustee's office.  Some of the issues were recurring and not corrected after Recovery Law personnel was instructed on local procedure by those other than Brown.  These issues increased the work for the Chapter 13 trustee's office, delayed confirmation and, consequently, delayed distributions to creditors.[23]

## IV.    THE UST'S MOTION AND RECOVERY LAW'S OBJECTION

The UST's Motion requests cancellation of Recovery Law's retainer agreement, disallowance and return of funds received by Recovery Law, and the imposition of sanctions. Recovery Law's Objection filed on May 3, 2021, was signed by Brown as "lead attorney" for Recovery Law.[24]  Only Brown's electronic signature (/s/) is on the Objection, but the signature block also includes the contact information for Peter Mulcahy, Recovery Law's general counsel in California.  It was revealed at the hearing that the Objection was drafted by Mulcahy.  The

---

[22] UST Exs. 12, 14, & 16.
[23] Johnson's case was filed on December 22, 2020, and her plan was confirmed on May 6, 2021; Dillard's case was filed on January 31, 2021, and her plan was confirmed on September 17, 2021; and Wheeler's case was filed on March 22, 2021, and no plan has been confirmed. *See* UST Exs. 11, 13, & 15.
[24] A prior Objection filed on April 30, 2021, was withdrawn.

Objection includes the following misrepresentations that contradict the record, evidence, and testimony of witnesses:

- Representation: "[Recovery Law] does its best to employ reputable and quality licensed attorneys in each district where it is present, including the District of South Carolina." (p. 2, ⁋ 2)
  - Evidence:
    - Wajda testified there was no set criteria for hiring attorneys, other than requesting 1-2 years bankruptcy experience, and Recovery Law has repeatedly hired attorneys without such experience.
    - Recovery Law did not conduct adequate due diligence prior to hiring Brown, Attorney 1, or Attorney 2.
- Representation: "[Recovery Law] clients speak with attorneys, not paralegals." (p. 2, ⁋ 4)
  - Evidence:
    - Wajda testified that 15-20 paraprofessionals work for Recovery Law and assist attorneys with prepetition work, including conducting initial intake information and contacting clients for needed documents and signatures.
- Representation: "[Recovery Law] lawyers are experienced bankruptcy lawyers, who understand bankruptcy law and the Bankruptcy Code, do not cut corners, and have zero tolerance for any attorney not complying with all ethical requirements." (p. 2, ⁋ 4)
  - Evidence:
    - Brown admitted he was not an experienced bankruptcy attorney.
    - Other South Carolina attorneys advertised on Recovery Law's website have limited to no prior bankruptcy experience, and two were not admitted attorneys that could file a bankruptcy case in this Court.
- Representation: "Neither, [Brown], nor [Recovery Law], represent this client, or any other client in a proportional relationship as the UST seems to suggest. [Brown], as employed by [Recovery Law], always represented the debtor in a 100% capacity throughout this matter, as any client is represented by a law firm in any matter." (p. 3, ⁋ 5)
  - Evidence:
    - Brown's involvement in this case and other cases mentioned above began after non-attorney personnel of Recovery Law, or attorneys who are not admitted attorneys, conducted initial consultations with the debtors, determined whether the debtors should file for bankruptcy relief, determined which chapter to file, and prepared the petitions, schedules, and statements.
- Representation: "[Brown] met with the Debtor via telephone and email and was always available to Debtor throughout the course of this case. Debtor was never left without competent admitted counsel or quality representation." (p. 3, ⁋ 6)
  - Evidence:

- ▪ Brown testified that he did not speak with Green when she contacted Recovery Law and did not review with her the Retainer Agreement or the fees charged.

- ▪ Brown did not discuss or review with Green her financial condition (including reviewing her tax returns, bank statements, and other financial documents), whether bankruptcy was in her best interest, which chapter to file, or alternative options. Brown understood that his duties began after the petition, schedules, and statements were prepared by Recovery Law personnel and provided to him for filing.

- ▪ Green testified that she never spoke to Brown and was unable to communicate with him. He also failed to appear at her initial § 341 meeting even though she was present by telephone.

- • Representation: "The UST in the Motion, states a concern of debtors being 'under-represented' in this District. To the contrary, debtors have received, continue to receive and will always receive quality and effective representation in a case." (p. 4, ¶ 9)

  - o Evidence:

    - ▪ The evidence indicates that in the cases mentioned above, there were significant delays caused by Recovery Law's non-admitted attorney personnel primarily handling those cases because they lacked knowledge of the local practice and procedures.

- • Representation: "[Brown] is an employee of [Recovery Law], who serves as the firm's partner attorney in the District of South Carolina. [Brown] is not to provide limited services as the UST suggests, but to provide competent bankruptcy representation to [Recovery Law]'s South Carolina clients." (p. 4, ¶ 10)

  - o Evidence:

    - ▪ Brown was hired on a contract basis and paid per case.

    - ▪ Brown's services did not begin until after a client's initial consultation and bankruptcy documents were completed.

- • Representation: "[F]ees are specifically enumerated in the Client Retainer Agreement as a flat fee amount and there are no hidden fees and no fee is ever charged to a client without full disclosure beforehand . . ." (p. 4-5, ¶ 11)

  - o Evidence:

    - ▪ Green's Retainer Agreement does not disclose Recovery Law's relationship with Brown, that Brown is paid a fee for the case, or the fees for the excluded services.

- • Representation: "[Brown], as an employee of the firm and not simply an appearance counsel, but contacts the client directly, goes over any and all issues, documents or agreements and is available to answer any question or direct the debtor to the proper person within the firm who can answer the particular question . . ." (p. 5, ¶ 11)

  - o Evidence:

13

- ▪ Brown's services did not begin until after Green's bankruptcy documents were completed.

- ▪ Brown never contacted Green, discussed any issues with her, or reviewed any of her bankruptcy documents.

- ▪ Brown was not available when Green attempted to contact him.

- Representation: "[Recovery Law]'s practice . . . compl[ies] with all local rules regarding the representation of a debtor in a bankruptcy case." (p. 5, ⁋ 11)

  - ○ Evidence:

    - ▪ The retainer agreements excluded services that are required under SC LBR 9011-1(b), including preparing reaffirmation and redemption agreements and motions to value property and/or avoid liens included in this Court's mandatory Chapter 13 form plan.

    - ▪ The evidence indicates Recovery Law's attorneys did not have a working knowledge of local rules and procedures as required under SC LBR 9011-1(a).

    - ▪ Recovery Law's attorneys did not comply with the requirements of SC LBR 9011-4 in that others used Brown's electronic signature and CM/ECF filing privileges to file documents without his supervision.

    - ▪ Non-admitted attorneys prepared documents for filing in this Court without adequate assistance from admitted attorneys. *See* SC LBR 9011-4; Local Civ. Rule 83.I.01, 83.I.02, & 83.I.05 (D.S.C.); SC LBR 2090-1.

- Representation: "Clients who retain [Recovery Law] do not speak to anyone at the firm who is not an experienced bankruptcy attorney with regard to a bankruptcy issue." (p. 5, ⁋ 12)

  - ○ Evidence:

    - ▪ The evidence indicates the South Carolina attorneys hired by Recovery Law are not experienced bankruptcy attorneys, despite advertisements to the contrary.

    - ▪ The evidence indicates clients routinely spoke with and were advised by Recovery Law's non-attorney staff and non-admitted attorneys who lacked adequate knowledge of local procedures.

- Representation: "While pleadings and documents may be compiled and completed with the assistance of paralegals and attorneys not admitted to the jurisdiction at any law firm, not just multi-jurisdictional law firms, all pleadings and documents, before they are filed, are reviewed and approved by the local admitted attorney after that attorney's consultation and disclosure with the specific client." (p. 5-6, ⁋ 12)

  - ○ Evidence:

    - ▪ Brown admitted he did not review documents prior to filing and documents were filed by Recovery Law staff using his CM/ECF credentials without his supervision.

    - ▪ Brown did not consult with Green to disclose that documents were prepared by non-attorney personnel or non-admitted attorneys.

14

- Representation: "It is [Recovery Law]'s locally employed partner-attorney who files all pleadings, documents and statements with the bankruptcy Court in the district and in this instance, with the bankruptcy court in the District of South Carolina." (p. 6, ⁋ 12)
  - Evidence:
    - Brown testified that documents were filed by Recovery Law staff using his CM/ECF credentials without his supervision.

- Representation: "Questions of local practice rules are referred to [Recovery Law]'s local employee-partner attorney in the jurisdiction." (p. 6, ⁋ 12)
  - Evidence:
    - Brown testified that he often contacted Recovery Law personnel who are not admitted attorneys to seek advice because he was not knowledgeable of this Court's local procedures.
    - Recovery Law attorneys who are not admitted attorneys contacted the Chapter 13 trustee's office with questions and for guidance numerous times in the cases mentioned above.

- Representation: "The business model of [Recovery Law] has been upheld to be compliant with local bankruptcy practice and United States Trustee offices throughout the United States." (p. 6, ⁋ 12)
  - Evidence:
    - Recovery Law submitted no evidence to support this claim.

- Representation: "The UST mischaracterizes the employer/employee relationship between [Recovery Law] and [Brown] in that it speculates, without a factual basis, [Brown] is limiting the services provided to the debtor. Nothing can be further from the truth and is inconsistent with the information already provided to the UST prior to the Motion. [Brown] is actively involved, in the pre-petition preparation, finalization and filing of all bankruptcy paperwork, including, among other things, conferring directly and personally with a Debtor, reviewing the documents prepared by his firm, reviewing filings with the client and associates, answering legal questions, providing legal advice regarding the effects of bankruptcy, its consequences, and its protections." (p. 7, ⁋ 14)
  - Evidence:
    - Brown was not involved in any prepetition activities for any of the debtors mentioned above, and he never conferred directly or personally with Green.
    - Recovery Law personnel who are not admitted attorneys provided prepetition legal advice to Green and other debtors mentioned above regarding the effects of bankruptcy, its consequences, and its protections.

- Representation: "[D]espite having been provided with the correct information, the UST incorrectly implies [Brown] joined the firm in August of 2020. [Brown] actually joined the firm in the spring of 2020 and was provided with and was working under his employment agreement, but due to an oversight, did not return the signed employment agreement until August." (p. 7, ⁋ 15)

15

- o Evidence:
  - ▪ Brown responded to a job opening posted by Recovery Law in July 2020 and the Employment Agreement was executed in August 2020.
- Representation: "Further, in order to shore up additional quality representation for debtors in the District of South Carolina, [Recovery Law] has hired attorney William Barr, formally [sic] of the Barr law firm who has *significant experience practicing bankruptcy law in the District of South Carolina* and joins [Recovery Law] as another attorney to assist in the representation of Debtors in the District of South Carolina." (p. 3, ⁋ 7) (emphasis added)
  - o Evidence:
    - ▪ This Objection containing this representation was filed in May 2021. Mr. Barr was licensed to practice law in South Carolina in January 2021 and admitted to practice in the U.S. District Court, and thus able to practice in this Court, in March 2021. He previously worked with his father, William Joseph Barr, before he was a licensed attorney.

After Recovery Law filed its Objection, the Court entered an order requiring a joint statement of dispute and scheduling a hearing. Brown filed a continuance request for the defending parties to obtain separate counsel and make travel arrangements for witnesses.[25] Additional extensions were granted for both parties and a discovery schedule was established.[26] On June 8, 2021, the Court entered an order giving ample notice of a hearing scheduled for August 31, 2021.[27]

The Joint Statement, signed by Ms. Barr, Brown, and Mr. Barr on behalf of Recovery Law was filed on August 13, 2021. That filing was Mr. Barr's first appearance in this case. Although the CM/ECF docket heading now indicates Mr. Barr represents Green along with Brown,[28] there is no evidence that he aided Green in her bankruptcy filing. Further, Mr. Barr's filed documents make statements contrary to the interests of Brown, and it appears from their content that he represents Recovery Law only in defense of this Motion. On Friday, August 27, 2021, Mr. Barr filed a motion to continue or waive in-person appearances at the hearing scheduled for Tuesday,

---

[25] ECF No. 53, filed May 7, 2021.
[26] ECF Nos. 60-62.
[27] ECF No. 62, entered June 8, 2021.
[28] This normally occurs when an attorney makes an electronic appearance and adds himself as an attorney for debtor.

August 31, 2021,[29] which was objected to by the UST and denied by the Court that day.[30]  Mr. Barr filed and signed the post-trial brief, and the signature block also includes the contact information for Mulcahy.[31]

At the hearing, Ms. Barr informed the Court that the UST seeks no relief against Brown.

**APPLICABLE LAW**

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and the Court has authority to enter a final order.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## I.   BANKRUPTCY AUTHORITIES

Section 329(a) requires an attorney representing a debtor in a bankruptcy case to file a statement of compensation paid or agreed to be paid for legal services related to the case.  Section 329(b) provides that if "such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to . . . the entity that made such payment."  "It is the attorney's burden to show the reasonableness of his fees." *In re Busche*, C/A No. 15-02559-DD, 2015 WL 6501157, at *3 (Bankr. D.S.C. Oct. 27, 2015) (citing *In re Kestner*, No. 12–32831–RAG, 2015 WL 1855357, at *10 (Bankr. D. Md. Apr. 20, 2015) ("Once a question has been raised about the reasonableness of an attorney's fees under section 329, the attorney bears the burden of establishing that the fee is reasonable.")).  Adequate and competent legal representation in connection with a bankruptcy case requires time to be spent before the filing of the bankruptcy case. *See In re Haynes*, 216 B.R. 440, 443 (Bankr. D. Colo. 1997) ("Before an attorney can properly advise a client as to whether they

---

[29] ECF No. 66.
[30] ECF Nos. 67 & 68.
[31] ECF No. 71, filed Sept. 30, 2021.

should (1) file for bankruptcy; (2) file a Chapter 7, or (3) file a Chapter 13, they must gather all the financial information from the client, analyze the information, and then explain the situation to the client, including at least a rough outline of what a Chapter 13 plan would look like.  All that remains after that is for this information to be typed onto the forms and file the forms with the court.").

A fee agreement may be cancelled, and compensation denied under § 329(b), if an attorney fails to comply with disclosure obligations under § 329(a) and Fed. R. Bankr. P. 2016(b). *See In re TJN, Inc.*, 194 B.R. 400 (Bankr. D.S.C. 1996); *Turner v. Davis, Gellenwater & Lynch (In re Inv. Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir. 1993).   Attorneys representing debtors in bankruptcy cases have an affirmative duty to disclose all fee arrangements and all payments fully and completely. *See* § 329(a); Fed. R. Bankr. P. 2016(b).

Section 526 of the Bankruptcy Code places certain restrictions on the activities of debt relief agencies.  Among those restrictions, a debt relief agency shall not:

(1)  fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title;

(2)  make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading; [or]

(3)  misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—

(A)  the services that such agency will provide to such person; or
(B)  the benefits and risks that may result if such person becomes a debtor in a case under this title[.]

11 U.S.C. § 526(a).  Further, § 528 requires debt relief agencies to execute and provide assisted persons with a written contract that "clearly and conspicuously" explains what services will be

provided, the fees or charges for those services, and the terms of payment. 11 U.S.C. § 528(a)(1)

& (2).  The Code provides various remedies for noncompliance, including:

> (1) Any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirements of this section, section 527, or section 528 shall be void and may not be enforced by any Federal or State court or by any other person, other than such assisted person.
>
> (2) Any debt relief agency shall be liable to an assisted person in the amount of any fees or charges in connection with providing bankruptcy assistance to such person that such debt relief agency has received, for actual damages, and for reasonable attorneys' fees and costs if such agency is found, after notice and a hearing, to have—
>
> > (A) intentionally or negligently failed to comply with any provision of this section, section 527, or section 528 with respect to a case or proceeding under this title for such assisted person . . . [or]
> > . . . .
> > (C) intentionally or negligently disregarded the material requirements of this title or the Federal Rules of Bankruptcy Procedure applicable to such agency.

11 U.S.C. § 526(c).  If the violation was intentional or indicates a clear and consistent pattern or

practice of violating § 526, the Court may "(A) enjoin the violation of such section; or (B) impose

an appropriate civil penalty against such person." 11 U.S.C. § 526(c)(5).

Additionally, § 105(a) specifically grants bankruptcy courts the power to "issue any order

. . . necessary or appropriate to carry out the provisions of this title."  Bankruptcy courts have

"broad authority" under § 105(a). *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375, 127

S. Ct. 1105, 166 L. Ed. 2d 956 (2007).  However, they may not use § 105(a) or their inherent

authority to issue sanctions that contradict or override explicit mandates of other sections of the

Bankruptcy Code. *Law v. Siegel*, 571 U.S. 415, 421, 134 S. Ct. 1188, 188 L. Ed. 2d 146 (2014).

"[T]he Bankruptcy Code, both in general structure and in specific provisions, authorizes

bankruptcy courts to prevent the use of the bankruptcy process to achieve illicit objectives." *In re

Kestell*, 99 F.3d 146, 149 (4th Cir. 1996); *see also In re Chicora Life Ctr., LC*, 553 B.R. 61, 67

(Bankr. D.S.C. 2016) ("The provisions of the Bankruptcy Code, including the equitable powers of the bankruptcy court under § 105, are designed to protect the public interest." (citing *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998))).  To that end, § 105(a) has been interpreted to instill bankruptcy courts with the civil contempt power. *See In re Walters,* 868 F.2d 665, 669 (4th Cir. 1989) (affirming the bankruptcy court's order holding in contempt an attorney who failed to comply with an order to refund unapproved attorney's fees).  Thus, "[b]ankruptcy courts have inherent and statutory power to police the conduct of the parties who appear before them and to impose sanctions on those parties who abuse the judicial process." *In re Banner*, C/A No. 15-31761, 2016 WL 3251886, at *7 (Bankr. W.D.N.C. June 2, 2016) (quotation marks and citation omitted).

It is well-established that the solicitation of financial information and preparation of bankruptcy petitions and schedules constitute rendering legal advice.  Therefore, if performed by a person not properly licensed, it may be considered the unauthorized practice of law.

> Advising a debtor regarding which documents to file with the court and/or the completion of the bankruptcy petition, schedules and other pleadings constitutes the practice of law.  Conduct constituting the practice of law includes a wide range of activities, including the preparation of legal instruments and advising clients of legal matters. *State v. Buyers Serv. Co., Inc.*, 292 S.C. 426, 357 S.E.2d 15, 17 (1987); *State v. Despain*, 319 S.C. 317, 460 S.E.2d 576, 578 (1995) (holding that the preparation of legal documents for presentation in family court constitutes the practice of law when the preparation involves the giving of advice, consultation, explanation, or recommendations on matters of law).  "Unquestionably, advising a person to file bankruptcy, and under what chapter to file, constitutes legal advice that can only be given under South Carolina Law by licensed attorneys." *In re Fleming,* C/A No. 17-05544-jw, slip op. *5 (Bankr. D.S.C. Feb. 22, 2018).

*In re Weathers*, 604 B.R. 13, 20-21 (Bankr. D.S.C. 2019); *see also In re Grimes*, 115 B.R. 639, 643 (Bankr. D.S.D. 1990) (solicitation of financial information and preparation of schedules is rendering legal advice, whether provided by lay persons or lawyers); *O'Connell v. David*, 35 B.R. 141, 143 (Bankr. E.D. Pa. 1983) (actual preparation and direct or indirect filing for the debtor of a

Chapter 7 petition and schedules constitutes the unauthorized practice of law) *modified,* 35 B.R. 146 (E.D. Pa. 1983) *aff'd,* 740 F.2d 958 (3d Cir. 1984); *In re Herren*, 138 B.R. 989, 994 (Bankr. D. Wyo. 1992) (The solicitation of financial information and preparation of bankruptcy schedules constitute rendering legal advice whether provided by lay persons or lawyers; the entity that provided copies of official forms to debtor, provided directions to complete the forms, and summarized and reformulated information solicited from debtor, was engaged in the unauthorized practice of law).

## II.    PRACTICE IN THE BANKRUPTCY COURT

The U.S. District Court's Local Rules provide the standards and restrictions regarding appearances in federal court.

> Litigants in civil and criminal actions, except for parties appearing *pro se*, must be represented by at least one member of the bar of this court who shall sign each pleading, motion, discovery procedure, or other document served or filed in this court. The attorney identification number is also required on each pleading, motion, discovery procedure, or other document served or filed in this court.

Local Civ. Rule 83.I.04 (D.S.C.).   To be admitted, the District Court's Local Rules require an applicant to certify in a written application that he or she meets various requirements – including that he or she is a member in good standing of the South Carolina bar, studied the South Carolina Rules of Professional Conduct, and completed the required trial experiences listed in Rule 403 of the South Carolina Appellate Court Rules[32] – and to include the certification of two attorneys who

---

[32] This Rule provides that attorneys admitted to practice in South Carolina "shall not appear as counsel in any hearing, trial, or deposition in a case pending before a court of this State until the attorney's trial experiences required by this rule have been approved by the Supreme Court." S.C. App. Ct. R. 403(a).   With certain exceptions for judicial law clerks, the Rule requires an attorney to complete four trial experiences at any time after completion of 2/3 of the credit hours needed for law school graduation. S.C. App. Ct. R. 403(b) & (c).   The four required trial experiences are:

> (1) Observation of or actual participation in one (1) civil or criminal jury trial in the Circuit Court of South Carolina or in the United States District Court for the District of South Carolina. The trial must include an opening statement, a closing argument, and direct and cross-examination of at least two (2) witnesses. Credit for actual participation requires actual participation in an entire jury trial if the attorney is accompanied by an attorney whose trial experiences have been

are members in good standing of the District Court bar that the applicant is of good moral character and professional reputation and meets the requirements for admission. Local Civ. Rule 83.I.03 (D.S.C.).[33]

Admission to practice before the District Court is "a prerequisite to practice in the bankruptcy division." Local Civ. Rule 83.I.01(B) (D.S.C.). Attorneys "must possess a working knowledge of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the local rules, local administrative and operating orders, Chambers Guidelines, and the applicable local rules of the United States District Court." SC LBR 9011-1(a).

The District Court adopted the South Carolina Rules of Professional Conduct. Local Civ. Rule 83.I.08 (D.S.C.), RDE Rule IV(B). Rule 5.5 of the South Carolina Rules of Professional Conduct provides:

> (b) A lawyer who is not admitted to practice in this jurisdiction shall not:
>> (1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or

---

approved under this rule or who is exempt from this rule, and the approved attorney is present throughout the hearing or trial;

(2) Observation of one (1) video trial that has been approved by the Supreme Court;

(3) Observation of one (1) Alternative Dispute Resolution proceeding in a Court of Common Pleas, Family Court, or Federal District Court matter or observation of one (1) video of an Alternative Dispute Resolution experience that has been approved by the Supreme Court; and

(4) Two (2) "day in court" experiences, selecting from the Court of Common Pleas, the Court of General Sessions, the Family Court, or a state or federal Administrative Law Court governed by either the South Carolina Administrative Procedures Act or the Federal Administrative Procedure Act, provided the administrative hearing(s) must take place within South Carolina. The presiding judge must attest on an approved form the presence of the student or attorney from the commencement of court through adjournment of court for the day, which must include a minimum of four (4) hours in court per day/experience.

One (1) of the "day in court" experiences required under this subsection may be satisfied by participation in a judicial observation and experience program approved by the Chief Justice's Commission on the Profession.

S.C. App. Ct. R. 403(b).

[33] *See also* Local Civ. Rule 83.I.05 (D.S.C.) (*Appearances by Attorneys Not Admitted in the District*). This Rule was not utilized by Recovery Law for representation of any litigant.

       (2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

(c) A lawyer admitted in another United States jurisdiction, and not debarred, disbarred or suspended from practice in any jurisdiction, may provide legal services *on a temporary basis* in this jurisdiction that:

       (1) are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter; [or]

       (2) are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized;

      . . . .

(d) A lawyer admitted in another United States jurisdiction, and not debarred, disbarred or suspended from practice in any jurisdiction, may provide legal services in this jurisdiction that:

    . . . .

      (2) are services that the lawyer is authorized to provide by federal law or other law of this jurisdiction.

S.C. App. Ct. R. 407, RPC 5.5 (emphasis added). The Rules of Professional Conduct also limit an attorney's use of any form of the words "expert" to avoid confusion with the South Carolina Supreme Court's program for certifying specialists, which includes certified specialists in bankruptcy/debtor-creditor law.

> A lawyer who is not certified as a specialist but who concentrates in, limits his or her practice to, or wishes to announce a willingness to accept cases in a particular field may so advertise or publicly state in any manner otherwise permitted by these rules. To avoid confusing or misleading the public and to protect the objectives of the South Carolina certified specialization program, any such advertisement or statements shall be strictly factual and shall not contain any form of the words "certified," "specialist," "expert," or "authority" . . .

S.C. App. Ct. R. 407, RPC 7.4(b).

Apart from certain exceptions not applicable here, SC LBR 5005-4 requires all documents be filed electronically utilizing the Court's CM/ECF system. "Filing any document using a CM/ECF login and password . . . constitutes the filer's signature for purposes of signing the document under Fed. R. Bankr. P. 9011 and any other applicable authority relating to signatures." SC LBR 9011-4(a).

23

This Court's Local Rules set forth the extent of an attorney's duty to represent a debtor as follows:

> Except as may be provided in a written agreement with the debtor concerning appeals and adversary proceedings, the law firm/attorney which files the bankruptcy petition for the debtor shall be deemed the responsible attorney of record for all purposes including the representation of the debtor at all hearings and in all matters arising in conjunction with the case, including service, notice and communication via CM/ECF and the Federal Rules of Bankruptcy Procedure. In the instance that the agreement is between the law firm and the debtor, the filing attorney shall be deemed the designated attorney for the law firm . . .

SC LBR 9011-(b).

## DISCUSSION AND CONCLUSIONS

Recovery Law solicited clients in South Carolina, including Green, over the internet with a website misrepresenting that an experienced South Carolina bankruptcy attorney or "local bankruptcy expert" was available at the firm and able to assist. After locating the website, Green retained Recovery Law. At the time she executed the Retainer Agreement, it included work that no person at Recovery Law was qualified or permitted to perform. After retention and payment from Green – and even after an admitted attorney was employed – Recovery Law's non-admitted attorneys, who were not local bankruptcy experts, provided legal advice and assistance to Green to file a bankruptcy case in this Court without supervision or assistance from an admitted attorney. The Retainer Agreement between Green and Recovery Law was never signed by a representative for Recovery Law and did not provide the fees for any excluded services. Brown was later hired and his credentials used for filing as well as appearance at the § 341 meeting and any necessary hearings. The Disclosure of Compensation did not disclose the need for payment to Brown for his services. The Disclosure of Compensation also included legal services performed by Recovery Law's personnel without supervision by an admitted attorney and no such attorney was involved. The terms of Green's Retainer Agreement, as well as Recovery Law's statements on its website,

24

included material misrepresentations.  The Disclosure of Compensation and Green's Retainer Agreement also contain untrue and misleading terms and do not explain clearly and conspicuously the services to be provided or the fees for such services.

Recovery Law argues its business model is permissible under Rule 5.5(c)(1), (c)(2), and/or (d)(2) of the South Carolina Rules of Professional Conduct.  Rule 5.5(c)(1) and (2) are inapplicable because they only provide exceptions if a lawyer admitted in another United States jurisdiction provides legal services on a temporary basis.  Recovery Law has filed more than 40 bankruptcy cases before this Court, 18 of which were filed by Brown with the majority of services provided by Recovery Law personnel who are not admitted attorneys and with minimal involvement by Brown.  The evidence does not support a view that these personnel provided legal services that meet the limitation of "temporary" under Rule 5.5(c).  Further, Recovery Law has failed to show how Rule 5.5(d)(2) provides an exception or any safe harbor here.

Recovery Law attorneys must comply with the bar admission requirements of the South Carolina Supreme Court, the District Court, and this Court, which require litigants (except for those appearing *pro se*) to be represented by at least one member of the bar of the District Court. In Green's case, no such member was available at Recovery Law to represent her at the time she contracted for its services.  Even after an admitted attorney was engaged in this case and the others mentioned herein, Brown regularly sought advice from individuals who are not admitted attorneys – as opposed to vice versa since he was marketed as the "local bankruptcy expert."  Recovery Law's staff who are not admitted attorneys regularly gave legal advice to clients and made legal decisions both pre- and post-petition, filed documents and pleadings using Brown's CM/ECF login credentials without his involvement, and electronically signed documents on his behalf without adequate, if any, supervision by Brown.  Regardless of any employment contract terms or

assertions to the contrary, the evidence indicates Recovery Law paid Brown a minimal amount because it intended to: do most of the work for South Carolina clients who seek bankruptcy advice without the assistance or supervision of Brown; monitor the cases through the shared email account; and use Brown as a mere conduit for his local filing privileges and court appearances.

Despite various representations as to Brown's adequate qualifications in its Objection, Recovery Law argued at trial and in its post-trial brief that the issues raised in Green's case and the others mentioned herein were primarily caused by Brown's misrepresentation of his prior bankruptcy experience, his deficient work performance, and Kealey's mistakes.   However, Recovery Law's business practices, lack of due diligence, and lack of regard for the truth in its advertisements provided a blueprint for these problems.   Green's case and the others mentioned herein demonstrate that the issues caused by Recovery Law's use of attorneys and staff without knowledge of local practice and procedures and its lack of concern about the same were repeated to the detriment of the involved debtors and others, despite contrary online advertising directed at prospective assisted persons.

The evidence shows Recovery Law violated § 526(a)(1), (2), and (3)(A), failed to satisfy its obligations under § 528(a)(1) and (2), failed to adequately disclose compensation as required by § 329(a), and the compensation received was unreasonable under § 329(b).   The acts do not appear to be isolated or accidental, but rather intentional as part of a for-profit scheme.   Pursuant to § 329(a) and (b) as well as § 526(c)(1) and (c)(2)(A) and (C), the retainer agreement between Recovery Law and Green must be voided and all fees forfeited.[34]

The combined actions discussed herein warrant further sanctions under §§ 105(a) and 526(c)(5)(B) to deter future violations of the applicable rules and statutes as Recovery Law

---

[34] The Court acknowledges that Recovery Law has already returned the funds paid by Green in connection with her bankruptcy case.

intentionally violated § 526 and engaged in a clear and consistent pattern or practice of violating § 526.  Recovery Law advertised to clients services it did not or could not provide because: its non-admitted attorneys and/or non-attorney staff perform the majority of the services it advertises will be provided by a "local bankruptcy expert"; the "local bankruptcy experts" have minimal or no prior bankruptcy experience, are not admitted attorneys, and/or are not knowledgeable of local practices and procedures; it failed to correct its marketing of a "local bankruptcy expert" after discovering the attorney was not an admitted attorney; and its advertised staff of "dedicated and experienced attorneys" involved in Green's case caused numerous errors in basic bankruptcy tasks. When confronted with these issues, Recovery Law's non-admitted attorneys drafted responsive pleadings that were filed by Brown, which contain misrepresentations about practices and procedures.  In anticipation that the UST's Motion alerted Recovery Law to applicable standards for practice in this Court, a minimal monetary amount is imposed to address the bankruptcy issues raised in the above-captioned case.  However, this should not be interpreted as an indication of a frivolous matter.  Rather, this decision disposes of the bankruptcy-related issues in Green's case only and does not restrict any further action in any case mentioned herein before this Court or any other authority.  Based on the foregoing,

**IT IS, THEREFORE, ORDERED THAT:**

1.     the retainer agreement between Teresa Denise Green and Recovery Law Group, APC fails to comply with 11 U.S.C. §§ 329(a) and 528(a)(1) and (2);

2.     the Disclosure of Compensation filed by Andrew Brown and/or Recovery Law Group, APC fails to comply with 11 U.S.C. § 329(a) and contains untrue and misleading statements in violation of 11 U.S.C. § 526(a)(2);

3.     Recovery Law Group, APC failed to perform services it informed Teresa Denise Green it would provide in connection with her case in violation of 11 U.S.C. § 526(a)(1), and the compensation paid to it exceeds the reasonable value of the services provided pursuant to 11 U.S.C. § 329(b);

4.     pursuant to 11 U.S.C. § 329(b) as well as § 526(c)(1) and (c)(2)(A) and (C), the retainer agreement between Teresa Denise Green and Recovery Law Group, APC is hereby void and cancelled, and Recovery Law Group, APC forfeits all fees for the above-captioned case and shall not seek reimbursement for any amounts already paid to Teresa Denise Green;

5.     pursuant to 11 U.S.C. §§ 105(a) and 526(c)(5)(B) and as a further monetary sanction, Recovery Law Group, APC is hereby ordered to pay an additional $1,635.00 to Teresa Denise Green **within 14 days from entry of this Order**. This amount shall be delivered to Teresa Denise Green along with a copy of this Order. **Within three (3) days after payment,** Recovery Law Group, APC shall file a declaration with this Court in the above-captioned case attesting to its compliance with this Order and attaching evidence of the payment ordered herein; and

6.     pursuant to Local Civ. Rule 83.IX.08 (D.S.C.), RDE Rule V(A),[35] the Court directs the Clerk of Court to transmit a copy of this Order directly to the South Carolina Office of Disciplinary Counsel to take any action it deems necessary and appropriate to regulate practice within the State.

---

[35] *See* Local Civ. Rule 83.I.08 (D.S.C.), RDE Rule V(A) ("Nothing herein shall, however, preclude a judge from reporting an attorney's actions or inactions directly to the disciplinary authority for any state where the attorney is admitted to practice . . .").